# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **AUTO-OWNERS** | ) | |
| **INSURANCE COMPANY**, a corporation, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | **Case No. 4:07-cv-00394** |
| | ) | |
| **MIDWEST AGENCY**, a corporation, | ) | |
| **B.O.O., LLC** d/b/a Midwest Agency, | ) | |
| a limited liability company, | ) | |
| **DEAN BRANSON**, an individual, | ) | |
| and | ) | |
| **JOHN M. O'CONNOR**, an individual, | ) | |
|     Defendants. | ) | |

## MEMORANDUM

This matter is before the Court on Defendants' motions to dismiss (Docs. #9, #11, #13; filed March 26, 2007). Responsive pleadings have now all been filed. This cause of action is currently set for trial on the Court's docket of August 11, 2008.

### Failure to State a Claim under F.R.C.P. 12(b)(6)

In their motions to dismiss, Defendants invoke Federal Rule of Civil Procedure 12(b)(6). When considering a 12(b)(6) motion, all factual allegations in the complaint, and reasonable inferences arising therefrom, must be construed in favor of the plaintiff. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); see Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999). Although specific facts are not necessary in order to survive a motion to dismiss, the complaint must include facts sufficient to give fair notice of the claim, and the grounds upon which it rests. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). See also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Lastly,

although a court may not consider "matters outside the pleadings," Fed R. Civ. P. 12(c); Casazza v. Kiser, 313 F.3d 414, 417 (8th Cir. 2002); the Rules do permit courts to examine and incorporate, for all purposes, any exhibits attached to a pleading. Fed R. Civ. P. 10(c). See, e.g., Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) (in cases involving contracts, courts may examine contract documents when deciding a motion to dismiss). With these principles in mind, the Court turns to examine Plaintiff's complaint, and the exhibits attached thereto, to determine its sufficiency under Rule 12(b)(6).

## Existence of the Agency Relation

The existence of liability alleged by Plaintiff depends in large part upon whether an agency relationship was created amongst the contracting parties. For purposes of 12(b)(6), the Court finds that the language of the contracts at issue evidences a clear and unambiguous intent by the parties to enter into an agency relationship.

Contract interpretation is a question of law, wherein courts must ascertain, and give effect to, the parties' intentions. State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 859 (Mo. banc 2006). Absent ambiguity, such intent is to be drawn from the instrument's four corners. Blackburn v. Habitat Development Co., 57 S.W.3d 378, 386 (Mo.App. 2001) (quoting Commerce Trust Co. v. Duden, 523 S.W.2d 97, 99 (Mo.App. 1975)). An ambiguity exists where, from the four corners of the contract, "...the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction..." Garner v. Hubbs, 17 S.W.3d 922, 927 (Mo.App. 2000) (quoting Frager v. Frager, 949 S.W.2d 173, 176 (Mo.App. 1997)). "Whether a contract is ambiguous is a question of law." Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc., 931 S.W.2d 909, 914 (Mo.App. 1996).

In the context of venue statutes, Missouri courts have defined "'agent' as a person authorized by another to act for him, one intrusted with another's business." State ex rel. Pagliara v. Stussie, 549 S.W.2d 900, 903 (Mo.App. 1977) (quoting BLACK'S LAW DICTIONARY 85 (4th ed. 1968)); State ex rel. Cameron Mutual Ins. Co. v. Reeves, 727 S.W.2d 916, 918 (Mo.App. 1987). Consistent with this definition, but more comprehensive, is the Restatement's definition, which provides: "[a]gency is the fiduciary relation which results from the manifestation of consent by one person [a principal] to another [an agent] that the [agent] shall act on [the principal's] behalf and subject to [the principal's] control, and consent by the [agent] so to act." Parshall v. Buetzer, 195 S.W.3d 515, 519 (Mo.App. 2006) (quoting RESTATEMENT

2

(SECOND) OF AGENCY § 1 (1958)).  Under the Restatement, essential attributes of an agency include: (1) the agent's power to alter legal relations between the principal and a third party, § 12; (2) the agent's status as a fiduciary with respect to matters within the scope of the agency, § 13; and (3) the principal's right to control the conduct of the agent with respect to matters entrusted to him, § 14.  State ex rel. Elson v. Koehr, 856 S.W.2d 57, 60 (Mo. banc 1993).  In determining its existence, an agency does not require "some particular mode or method" of creation.  Empson v. Missouri Highway & Transp. Com'n, 649 S.W.2d 517, (Mo.App. 1983) (citing Smoot v. Marks, 564 S.W.2d 231, 236 (Mo.App. 1978)).  Rather, a relationship will be recognized if the "facts fairly disclose that a party is acting for or representing another by and subject to the latter's authority."  Id.

### i.  Power to Alter Legal Relations

The agreements entered into by the parties evidence an intent to enable the agents to alter the legal status of their principal.  Plaintiff alleges that, in April of 1998, it entered into a contract with Defendant Midwest Agency ("Midwest), signed by Defendants O'Connor and Branson, authorizing  Midwest to solicit and secure applications, and to bind coverages of various types of bonds.  (Doc. #1-1: 3, filed February 28, 2007.)  The contract (entitled "Agency Contract") evidences this allegation, stating that Plaintiff appoints and grants authority to the agents "to solicit and secure applications and to bind coverage..."  (Doc. #1- 2: 1.)  Further, the Addendum to the Agency Contract named Defendant B.O.O., LLC ("BOO"), doing business as Midwest, as a contracting party.  (Doc. #1-2: 4.)  Next, according to the complaint, Defendants Midwest and O'Connor issued two bonds, naming Plaintiff as surety.  (Doc. #1-1: 5.)  Since the time of said issuance, full payment of the bond, and costs for delay, has been demanded from Plaintiff; and a lawsuit has been filed against Plaintiff to recover the same.  (Doc. #1-1: 5-6.)  A copy of the bonds were attached to the complaint and detail Plaintiff's alleged obligation to guarantee and pay the full value of the bond upon nonpayment by the obligor.  (Doc. #1-2: 32, 35.)  Finally, the power of attorney agreement, appointing Defendants O'Connor and Branson to serve as Plaintiff's attorneys-in-fact, granted authority to "execute, seal, and deliver on its behalf as surety, any and all bonds and undertakings..."  (Doc. #1-2: 34, 36.)

In view of the allegations and documents, the Court finds that the Agency Contract authorizes Defendants BOO and Midwest to alter the legal relationship of Plaintiff; the bonds

subsequently issued by Midwest further illustrates that potential.  Additionally, the four corners of the power of attorney agreements empowering individual Defendants O'Connor and Branson, evidence a clear and unambiguous intent for said individuals to alter the legal status of Plaintiff.  Therefore, the Court finds that Defendants BOO, Midwest, O'Connor and Branson were in a position to alter the legal relationship of Plaintiff.

### ii.  Agent as Fiduciary

The Court finds that the agreements entered into by and between the parties gave rise to fiduciary obligations.  Specifically, the Agency Contract entered into by the parties states that the agents are deemed the trustees of Plaintiff and must conduct an accounting for all monies received.  (Doc. #1-2: 1-2.)  Next, Defendants O'Connor and Branson executed guaranty agreements, personally obligating them to unconditionally guarantee all amounts due to Plaintiff from Defendant BOO or Midwest.  (Doc. #1-2: 13-14.)  Further, Defendants O'Connor and Branson signed the power of attorney agreements, respectively appointing each Plaintiff's attorney in fact.  (Doc. #1-2: 34,36.)  While a guaranty agreement does not, in and of itself, give rise to a fiduciary duty, Royal Banks v. Fridkin, 819 S.W.2d 359, 361 (Mo. banc 1991) (guaranty agreements are subject to the rules of contract); see also Lemay Bank and Trust Co. v. Harper, 810 S.W.2d 690, 693 (Mo.App. 1991); it is well-settled law that trustees and attorneys in fact are held to fiduciary standards.  Saigh v. Saigh, 218 S.W.3d 556, 561 (Mo.App. 2007) (quoting Ramsey v. Boatmen's First Nat. Bank of Kansas City, N.A., 914 S.W.2d 384, 387 (Mo.App. 1996)) ("A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty in administration of the trust."); see also RESTATEMENT (SECOND) OF AGENCY § 14B (One who has title to property, which he agrees to hold for the benefit and subject to the control of another, is an agent-trustee and is subject to the rules of agency).  Mo.Rev.Stat. §§ 404.710.5, 404.712, 404.714 (attorney in fact shall exercise power of attorney in accordance with fiduciary duties).

### iii.  Principal's Right to Control

The agreements entered into by Plaintiff and Defendants evidence a right of the principal to control the agents.  Specifically, the Agency Contract (to which both Midwest and BOO were a party) provides that Plaintiff appoints and grants authority to the agents "...subject to company rules and regulations."  (Doc. #1-2: 1.)  In the complaint, Plaintiff alleges that,

pursuant to the terms of the Agency Contract, it issued "Letters of Instructions;" and Defendants O'Connor and Branson "individually and personally thereafter agreed to, accepted and signed off on such Letters of Instructions on or about January 29, 1999 and again on or about February 11, 2005." (Doc. #1-1: 3.) The Letters; subtitled "Agent's Agreement Concerning Limitations on the Use of Power of Attorney," addressed to Defendant Midwest, and executed by Defendants O'Connor and Branson; listed Defendants' duties before the issuance and/or execution of bonds on Plaintiff's behalf. (Doc. #1-2: 5-8, 9-12.) Finally, the guaranty agreements, signed by Defendants O'Connor and Branson, gave Plaintiff the power to compel each to pay any amounts due from Defendant Midwest. (Doc. #1-2: 13-14.) Thereupon, the Court finds that Plaintiff had the right to control each Defendant Midwest, BOO, O'Connor and Branson.

Taking all factual allegations in the complaint, and reasonable inferences arising therefrom, in favor of Plaintiff, the Court finds that an agency relation did exist. Specifically, the Agency Contract, Letters of Instruction, guaranty agreements, and power of attorney agreements evidence an intention by the parties named therein to confer agency status by and amongst them. Further, the documents and allegations sufficiently establish that the agents had the ability to alter the legal status of their principal, the agents were subject to fiduciary duties, and the principal had the right to exercise control over the agents. Having resolved this preliminary issue, the Court turns to Defendants' motions.

### I. Defendant BOO's Motion to Dismiss (#9)

In its motion to dismiss, BOO alleges that Defendant Midwest "has absolutely no involvement with the contract at issue in this case." (Doc. #10: 1.) As evidence, BOO cites the Agency Contract's Addendum and states that the contract at issue is between Plaintiff and BOO, doing business as Midwest. (Doc. #10: 1.) Further, BOO states that the named party, "Midwest Agency, a corporation," does not exist. (Doc. #10: 2.) As support, BOO attaches a printout of the Missouri Secretary of State's webpage, which displays no active or inactive entity listed under Midwest's name. (Doc. #10: 3.)

The Court finds Defendant BOO's argument without merit. Plaintiff's complaint alleges that Midwest was the original party named in the Agency Contract, and as BOO points out, Midwest was again named in the Addendum. Further, each of the Letters of Instructions were

addressed solely to Midwest Agency. Taking the facts and inferences therefrom in the light most favorable to Plaintiff, the Court concludes that Midwest is a proper party to the lawsuit.

Next, in its motion to dismiss (#9), Defendant BOO asks the Court to adopt and apply the arguments made in Defendants O'Connor and Branson's motion to dismiss (#11) to Defendant Midwest.

### Count I- Breach of Contract

Defendant BOO moves to dismiss Plaintiff's breach of contract claim as against Defendant Midwest because it is not party to any contract with Plaintiff. This argument fails. Plaintiff's complaint alleges a breach of contract by Defendant Midwest. The four corners of the contracts (Agency Contract and Letters of Instructions), which have allegedly been breached, clearly evidence an intent to bind the parties named therein. In that way, Midwest is a named party in both the Agency Contract and Addendum thereto, and the Letters of Instructions. Thereupon, the Court finds Midwest to be a proper party as to Count I. See Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc., 931 S.W.2d 909, 914 (Mo.App. 1996) (quoting Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15, 21 (Mo. banc 1995)):

> The cardinal principle for contract interpretation is to ascertain the intention
> of the parties and to give effect to that intent. In order to determine the intent
> of the parties, it is often necessary to consider not only the contract between
> the parties, but "subsidiary agreements, the relationship of the parties, the
> subject matter of the contract, the facts and circumstances surrounding the
> execution of the contract, the practical construction the parties themselves
> have placed on the contract by their acts and deeds, and other external
> circumstances that cast light on the intent of the parties." (Citations omitted.)

### Count II- Negligence

Next, Defendant BOO moves to dismiss Plaintiff's negligence claim. Defendant's motion to dismiss Count II is granted, as to Defendant Midwest, because Plaintiff's claim is barred by the "Economic Loss Doctrine." See infra.

## Count III- Breach of Fiduciary Duty

Lastly, Defendant BOO moves to dismiss Count III, as to Defendant Midwest, asserting that no fiduciary relationship existed between Plaintiff and Midwest. In accordance with the foregoing discussion, the Court finds Plaintiff's breach of fiduciary duty claim is proper, in that there is sufficient evidence to establish the same. See supra. Thereupon, Defendant BOO's motion to dismiss Count III is denied.

Accordingly, Defendant BOO's motion to dismiss party-Defendant Midwest from the current action, and to dismiss Counts I and III as they pertain to Midwest, is denied. The motion to dismiss Count II, as to Midwest, is granted.

## II.  Defendants' Branson and O'Connor's Motion to Dismiss (#11)
## Count I.  Breach of Contract

Defendants Branson and O'Connor ask the Court to dismiss Count I as against them because they are not parties to any contract with Plaintiff. The Court agrees in part.

Plaintiff's complaint alleges a breach of contract by Defendants. With respect to Branson and O'Connor, the four corners of the Agency Contract and Addendum thereof do not reveal an intention by the parties to bind Defendants O'Connor and Branson personally. Conversely, the Letters of Instructions, signed by Defendants, clearly state: "If any bond or obligation is executed in violation of the authority, limits and conditions granted hereby, the Agency and the person or persons signing such unauthorized bond may be held responsible for any loss the Company may sustain." (Doc. #1-2: 5, 9.) In that Plaintiff's complaint alleges that the unauthorized bond was issued by Midwest, and signed by O'Connor, Defendant O'Connor is an appropriate party to the breach of contract claim. See Husky Industries, Inc. v. Craig Industries, Inc., 618 S.W.2d 458, 461 (Mo.App. 1981) (where the agreement expressly provides, an agent may be personally subject to liability for exceeding the scope of his authority).

Accordingly, Defendant Branson is dismissed as to Count I- Breach of Contract. Defendant O'Connor is a party to Count I- Breach of Contract only to the extent of a breach of the Letters of Instructions.

## Count II.  Negligence

Defendants claim that Plaintiff's negligence action is barred by the "Economic Loss Doctrine," in that Plaintiff claims only economic losses.  The Court agrees.

While sitting in diversity, a federal court should abstain from expanding substantive liability under state law.  Self v. Equilon Enterprises, LLC, No. 4:00CV1903TA, 2005 WL 3763533, at *11 (D.Mo. Mar. 30, 2005) (citing Trimble v. Asarco, Inc., 232 F.3d 946, 963 (8th Cir. 2000)).  Therefore, if there are two possible conflicting interpretations of a state's law, the narrower interpretation restricting liability is generally preferred.  Id.

Missouri's Economic Loss Doctrine precludes liability for negligence in cases where the recovery sought is purely economic.  Rockport Pharmacy, Inc., v. Digital Simplistics, Inc., 53 F.3d 195, 198 (8th Cir. 1995) (citing R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 828-29 (8th Cir. 1983)); Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc., 625 S.W.2d 906, 909 (Mo.App. 1981).  However, an exception is applied in negligence claims involving defendants who have been held to a professional, rather than an ordinary, standard of care and who have provided professional services to the plaintiff.  Bryant v. Murray-Jones-Murray, Inc., 653 F.Supp. 1015 (D.Mo. 1985).  When a person possesses knowledge or skill superior to that of an ordinary person, the law requires of that person conduct consistent with such knowledge or skill.  Business Men's Assurance Co., 891 S.W.2d at 453.

Although Plaintiff argues that Defendants' services were consistent with the professional services described in the preceding line of cases, its argument is unconvincing and without citation.  Plaintiff has not sufficiently established that the agents at issue were required to exercise a higher than ordinary degree of care in carrying out the orders of their principals.  See Hecker v. Missouri Prop. Ins. Placement Facility, 891 S.W.2d 813, 816 (Mo. banc 1995) (plaintiff in an action for negligence bears the burden to establish the duty of care owed to him).  Lumbermens Mut. Cas. Co. v. Thornton, 92 S.W.3d 259, 266 (Mo.App. 2002) (finding of a duty is a question of law).

As regards the instant case, the parties entered into a number of agreements, establishing an agency and giving rise to a fiduciary duty.  Additionally, the documents evidencing the parties' reliance upon this relationship, and their respective duties and authority, moves this Court to conclude that Defendants owed a contracted duty to Plaintiff,

"to perform his job, act in accordance with authority vested in him by his principal and to follow and adhere to any instructions from his principal..." See American Mortg. Inv. Co. v. Hardin-Stockton Corp, 671 S.W.2d 283, 293 (Mo.App. 1984) (citing Fitzpatrick v. Federer Realty Co., 351 S.W.2d 673 (Mo.App. 1961)). However, there is nothing in the pleadings which moves the Court to hold that Plaintiff was owed any greater duty of care.

Based upon the ordinary duty of care owed to Plaintiff, the Court finds that the Economic Loss Doctrine bars Plaintiff's negligence claims as to Defendants. E.g., Mo.Rev.Stat. § 404.714.1 (attorney in fact shall exercise degree of care observed by prudent person except where he has special skills); American Mortg., 671 S.W.2d at 293 (agent is required to exercise reasonable skill, diligence, and care in the handling of business given over or entrusted to the [agent]). Compare Jones v. Kennedy, 108 S.W.3d 203, 207 (Mo.App. 2003) (insurance agents seeking to procure insurance for their customers are held to a professional standard of care); and Business Men's, 891 S.W.2d at 454 (architects provide professional services).

### III.  Breach of Fiduciary Duty

Lastly, Defendants claim that no fiduciary duty existed as between themselves and Plaintiff.  As previously concluded, the Court finds sufficient evidence that a fiduciary relationship existed.  See Jones, 108 S.W.3d at 208 (citing A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo.App. 1998)) ("The legal relationship between an agent and a principal is generally recognized as being fiduciary in nature."). See also RESTATEMENT (SECOND) OF AGENCY § 13 (An agent is a fiduciary with respect to matters within the scope of his agency.).

Accordingly, as to Count I, Defendants' motion to dismiss is denied in part as to Defendant O'Connor and granted in its entirety as to Defendant Branson.  As to Count II, Defendants' motion to dismiss is granted.  As to Count III, Defendants' motion to dismiss is denied.

### III. Defendant BOO's Motion to Dismiss (#13)

#### Count II- Negligence

Defendant BOO moves to dismiss Plaintiff's negligence claim on the same grounds argued by Defendants O'Connor and Branson. The Court holds that Plaintiff's negligence claim is barred by the Economic Loss Doctrine. See Supra. Therefore, Count II is dismissed as to Defendant BOO.

#### Count III- Breach of Fiduciary Duty

Next, Defendant BOO moves to dismiss Count III, claiming that Defendant BOO did not owe Plaintiff a fiduciary duty. In line with the foregoing discussion, the Court finds Plaintiff's breach of fiduciary duty claim is proper, in that there is sufficient evidence to establish a fiduciary relationship. See Supra. Thereupon, Defendant BOO's motion to dismiss Count III is denied.

Accordingly, Defendant BOO's motion to dismiss is granted as to Count II and denied as to Count III.

**Dated this 27th day of September, 2007.**

_____

**Senior United States District Judge**